UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL NO. 25-CR-291 |
| v. : | |
| : | |
| JOSHUA ROSSER, : | |
| : | |
| Defendant. : | |

### DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION TO DETAIN DEFENDANT PENDING SENTENCING

Defendant Joshua Rosser, through undersigned counsel, hereby files his opposition to government's motion to detain defendant pending sentencing. ECF Dkt. No. 19. Mr. Rosser has been incarcerated for almost five weeks. Given that we contend he is eligible for probation[1] if the Court accepts his guilty plea, the particularly punitive nature of his incarceration, specifically the indifference to his serious medical condition and need for surgery, continued pretrial detention is not warranted. Mr. Rosser is not a risk of flight nor a danger to the community. To the extent the Court believes he is either, any risk can be addressed through the proposed conditions of release. Mr. Rosser asks the Court to release him pending sentencing with location monitoring, appointing Latoya Bell as third-party custodian, and any other conditions deemed appropriate by the Court. The United States opposes this Motion and the relief sought.

---

[1] According to data from the DC Sentencing Commission, 153 people have been sentenced for fleeing from law enforcement between 2015 to 2024. More than half have been sentenced to a term of imprisonment of three months or less. Of those, 62 defendants have been sentenced to a fully suspended sentence. It is unclear from the available data whether any of those sentenced lacked a prior conviction. It is not uncommon for charge bargaining to occur in Superior Court, where the felony charge is reduced to a misdemeanor.

1

**Procedural History**

Mr. Rosser was arrested on September 2, 2025. He was charged by Complaint on September 3, 2025 with Assaulting, Resisting, or Impeding Certain Officers or Employees in violation of 18 U.S.C. §§ 111(a)(1) and (b). He made his initial appearance on September 3, 2025. A detention hearing was held on September 5, 2025. The Court granted the government's motion for pretrial detention. On September 18, 2025, the government filed an Information charging Mr. Rosser with Assaulting, Resisting, or Impeding Certain Officers or Employees in violation of 18 U.S.C. §§ 111(a)(1) and Felony Fleeing from Law Enforcement in violation of 50 D.C. Code § 2201.05(b)(2). On September 28, 2025, Mr. Rosser filed a motion to revoke detention order. ECF Dkt. No. 17. His arraignment was held on October 2, 2025, where he entered a plea of not guilty, and his motion to revoke detention order was held in abeyance. Defendant's plea agreement/motion hearing is scheduled for October 7, 2025 at 1:00 p.m., where it is anticipated that he will plead guilty. Mr. Rosser is being held at the D.C.

**Legal Standard**

Pursuant to 18 U.S.C. § 3143(a)(1), "the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence, other than a person for whom the applicable guideline promulgated pursuant to 28 U.S.C. 994 does not recommend a term of imprisonment, be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c). If the judicial officer makes such a finding, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c)."

Should the Court impose conditions of release, they should be "the least restrictive" conditions that the Court "determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). In evaluating whether conditions of release are adequate to satisfy the mandate of the Bail Reform Act, the Court shall consider: 1) the nature and circumstances of the offense charged; 2) the weight of the evidence against the person; 3) the history and characteristics of the person; and 4) the nature and seriousness of the danger to any person and the community that would be posed by the person's release. 18 U.S.C. § 3142(g). The government must prove dangerousness to the community by clear and convincing evidence. *United States v. Himler*, 797 F.2d 156, 160–61 (3d Cir. 1986); 18 U.S.C. § 3142(f). Moreover, to find danger to the community, the government must provide evidence to "support such a conclusion with a high degree of certainty." *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985). The "dangerousness inquiry" is a "forward-looking determination." *United States v. Krol*, 642 F. Supp. 3d 28, 36 (D.D.C. 2022) (internal citations and quotations omitted).

**Conditions of Release Exist To Satisfy The Requirements of 18 U.S.C. 3142 (c)(1)**

Mr. Rosser respectfully submits that conditions of release exist that satisfy the conditions of 18 U.S.C. 3142(c)(1). Specifically, Mr. Rosser proposes the following conditions of release:

1)   He will comply with the requirements of 18 U.S.C. § 3142 (c)(1);

2)   Latoya Bell will serve as a third-party custodian;

3)   He will be subject to home detention at home of Latoya Bell and allowed to leave the home for work, meeting with his counsel, and medical appointments;

4)   The residence would be inspected by Pretrial Services before he is allowed to move in;

5)   He will not be permitted to drive; and

6)      He will wear a GPS electronic monitoring unit and will follow all procedures specified by Pretrial Services.

Turning to the factors set forth in 18 U.S.C.§ 3142(g), our submission is that these proposed conditions of release are adequate to assure Mr. Rosser's appearance at all future court proceedings and the safety of the community.

I.      **Nature and Circumstances of Offenses Charged**

The government alleges that Mr. Rosser assaulted a law enforcement officer while fleeing an attempted traffic stop.  On September 2, 2025, a caravan of officers was patrolling the District of Columbia.  The law enforcement officers were members of the Executive Order 14252 Task Force.  They were in plainclothes and driving unmarked vehicles, including a minivan.  The government alleges that Mr. Rosser was driving a vehicle with "heavily tinted" windows and had a temporary paper tag that "[o]fficers immediately recognized []to be a counterfeit Texas Buyer's tags based on their experience and knowledge."  ECF Dkt. No. 1-1, Statement of Facts at P. 1.  The paper tag also resulted in "NO RETURN" when run through NCIC.  Notably, the alleged counterfeit tag was in the rear of the vehicle and not visible when law enforcement initially observed Mr. Rosser's vehicle.

While Mr. Rosser was stopped at a red light, one of the unmarked police vehicles pulled up next to him.  The vehicle had heavily tinted windows and a Virginia license plate:

4



After the light turned green, the undercover van crossed a solid line and pulled in front of Mr. Rosser.



After cutting in front of Mr. Rosser's vehicle, the undercover van reversed into Mr. Rosser's vehicle, striking it.  Mr. Rosser then maneuvered around the vehicle that struck him and turned left at the traffic light.

　　　　Law enforcement pursued Mr. Rosser.  During the pursuit, it is alleged that Mr. Rosser struck an unmarked vehicle, causing a Deputy US Marshal to hit his "head [on] his head rest,

resulting in an injury to his head." ECF Dkt. No. 1-1, P.4.  The injury was described as minor and resulted in the use of over-the-counter pain medicine for three (3) days.  The same Deputy US Marshal has stated that Mr. Rosser was attempting to "flee from law enforcement and that [Mr. Rosser] was not trying to directly hit the DUSMs vehicle."  September 10, 2025 Email from AUSA Jared English.  The chase ended, and Mr. Rosser was arrested in the 4100 Block of Stanley Street, SE.  No weapons or drugs were found on Mr. Rosser, in his vehicle, or in the area where he was arrested.

## II.    Weight of Evidence

Congress has mandated that no provision of the Bail Reform Act "shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j).  With regards to the charged offense, the law enforcement officer who allegedly suffered the minor injury has stated that he does not believe Mr. Rosser intended to strike his vehicle.  Further, it was the unmarked police vehicle that first struck Mr. Rosser's vehicle.  He was in fear for his life during the time of the pursuit based on the circumstances that initiated the pursuit and events from days prior.  His state of mind must be considered in evaluating his alleged actions on September 2, 2025.  Lastly, the alleged counterfeit tag was not visible when law enforcement first observed Mr. Rosser's vehicle, and it is unknown how law enforcement recognized it to be counterfeit when it was not visible before they performed a U-turn in the middle of the street to pull behind Mr. Rosser.

## III.    History and Characteristics

When evaluating the history and characteristics of the defendant, the Court considers "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings."  18

U.S.C. § 3142(g)(3)(A). Mr. Rosser has a loving, supportive family and close friends. The proposed third-party custodian, Latoya Bell, is prepared to accept Mr. Rosser into her home. His father and sister were present for the detention hearing on September 5, 2025.

Mr. Rosser is a lifelong resident of the District of Columbia. He is a "great young man." Exhibit A, Letter from Tracey Robinson. He comes before the Court with no criminal convictions. Tragically, his mother has struggled with mental health issues her entire life. She was unable to care for Mr. Rosser or his siblings. He spent the first 9 years of his life living with his paternal grandmother. The family struggled in every conceivable way. Mr. Rosser's Aunt, Stephanie Graves, took him in. She notes how he was initially "a little rambunctious and extremely independent, but that all changed once he was given structure and guidance." Exhibit B, Letter from Stephanie Graves.

After graduating from high school, Mr. Rosser set his sights on college. He was planning to attend college in the U.S. Virgin Islands on a scholarship. A visit to the campus led him to believe it was too far from home, and it was not a good fit. He regrets that decision almost daily. A joke about having to take a boat to classes scared him away. Instead, he enrolled in college at Chowan University in Murfreesboro, North Carolina. Mr. Rosser was thrilled to be able to attend college and be surrounded by individuals seeking to better themselves. It was different from what he saw in Washington, D.C. Unfortunately, the funding he was relying on to pay for school fell through. He could not afford to stay in school and left during the first year. After returning home, he has held multiple retail jobs, ranging from dollar stores, auto repair stores, to grocery stores. He also became a father. Shortly before being arrested, he found an opportunity working for a staffing company based in Virginia. He was excited about the opportunity. It was a chance to advance his career and work with school-age children.

7

A few days before his arrest in this case, Mr. Rosser was the victim of a crime. He was moving his belongings out of the apartment of an acquaintance, J.C. He was previously in a romantic relationship with J.C. While he was doing this, J.C. arrived at the apartment with her brother and several other males. The group attacked Mr. Rosser. They beat him with their hands, and he was stabbed multiple times. He pleaded for his life. After several minutes, the group left, leaving Mr. Rosser bloodied.



After allowing time to pass and believing they were gone, Mr. Rosser left and went to the home of a relative who lived close by. He was in immense pain, and his clothes were stained with blood from the attack.

His family helped clean him up and calm him down. They also took pictures of his wounds. Mr. Rosser contacted the police. The event was very traumatic for Mr. Rosser, and he was fearful that those responsible would hunt him down and kill him. He had not mustered the strenght to make a formal report to law enforcement before his arrest in this case. He had spoken to an MPD

8

investigator and was planning to meet him to make a formal report.

Mr. Rosser has never spent the night incarcerated prior to his arrest in this case. He is at the DC Jail Central Treatment Facility (CTF). The conditions at the jail are difficult for even those with lengthy criminal histories. Recently, three inmates were stabbed in one day. Liam Bowman, Three inmates injured in D.C. jail stabbing, police say., Washington Post (9/26/25) https://www.washingtonpost.com/dc-md-va/2025/09/26/dc-jail-stabbing/. There are well-documented reports of rodent infestations, flooding, mold, and constant violence. *Urgent Need for New D.C. Jail*, Report by the Office of the D.C. Auditor, May 28, 2025[2]. There are also issues with accessing medical care, specifically being seen by outside providers. *Id*. at P. 81. Mr. Rosser if suffering from a serious medical issue, a broken foot. He has been waiting for weeks for a referral to be approved related to his broken foot. He was told that he may suffer permanent impairment to his foot if surgery is not performed. Magistrate Judge Upadhyaya has attempted to facilitate the approval of the referral. No progress has been made. The period of incarceration he has served to date, particularly in the punitive conditions existing at the DC Jail, will ensure that Mr. Rosser follows all conditions imposed by the Court. He wants to return to his family and return to work to support his family. He will also work to pay restitution to the government.

The government argues that the issuance of several temporary protective orders and allegations contained in police reports naming Mr. Rosser as a suspect mandate pretrial detention. The Court should reject this attempt to use such claims as the basis for keeping Mr. Rosser incarcerated. Only one of the allegations cited by the government was pursued in court, which did not result in a conviction. In that case, Mr. Rosser was involved in a minor altercation where O.T., the mother of his eldest daughter, attempted to strike him. She tripped, falling to the ground and

---

[2] (Available at https://cdn.prod.website-files.com/659c0df344c9c8325dd821ca/6837197775af1c53f8f34cf0_JailUpdate_Web_v5.pdf)

injuring her mouth. The allegations in the Affidavit in Support of Arrest Warrant (ECF Dkt. No. 19 at P. 30), simply did not happen. Mr. Rosser pleaded guilty to simple assault as part of a deferred sentencing agreement. The case did not result in a conviction.

The other allegations raised by government are unsubstantiated. Mr. Rosser vehemently denies the allegations contained in the petitions and police reports cited by the government. He did not commit the acts alleged. Mr. Rosser has had several volatile relationships. Regrettably, all of these relationships ended on bad terms. Mr. Rosser does not know why any of his former romantic partners would make such spurious claims. One of his former paramours, R.R., filed a series of false police reports in Maryland. R.R. also arranged for Mr. Rosser to be attacked and maced at work and had his tire slashed. Notably, despite raising these allegations for more than a month, the government has not attempted to provide corroboration for any of the allegations. The government has not proffered any recent interviews with any of the alleged complainants. Instead, it relies on statements about Mr. Rosser he has never been able to challenge, and some of which he had no knowledge of. The fact that a majority of the claims were not pursued should cause the Court to question the validity of these claims. They should be given no weight. This is particularly the case given that the Court is looking at future dangerousness.

**IV.       Danger to Community**

This Court has noted that certain "supervisory conditions," such as home detention and the selection of a suitable, third-party custodian can mitigate the Court's concern for the safety of the community. *See United States v. Klein*, 539 F. Supp. 3d 145, 155 (D.D.C. 2021) (noting that despite previous convictions for unlawful possession of a firearm, "it is possible that appropriate conditions on [the defendant's] release might provide sufficient assurances of community safety"). A proposed third-party custodian may be considered unsuitable if she or he encouraged the alleged

criminal activity or recommended to the defendant measures by which to destroy evidence after engaging in criminal activity. *See id.* at 156. A third-party custodian may be insufficient if the Court finds there to be a serious question regarding their ability to "promptly and truthfully" report violations of the defendant's conditions of release. *United States v. Caldwell*, No. 21-181 (CKK), 2022 LEXIS 10043, at *12-13 (D.D.C. Jan. 19, 2022) (finding that the defendant's ex-spouse was unlikely to readily report violations to law enforcement because the defendant had previously violently prevented her from reporting his abuse of her to emergency services).

Latoya Bell is a suitable third-party custodian. She was interviewed by Pretrial Services, and we understand she was deemed eligible to serve as a third-party custodian. Despite the significant burden that would be imposed as a third-party custodian, she is committed to helping Mr. Rosser and serving as the eyes and ears of Pretrial Services and the Court. Mr. Rosser understands the expectations she will place on him and is grateful for her support.

## V. Mr. Rosser Is Not a Flight Risk

The circumstances that led to the events of September 2, 2025, will not be repeated. Mr. Rosser thought the individuals who attempted to kill him on August 29, 2025 had returned when the unmarked van with tinted windows backed up into his car. He understands that he needs to seek treatment to address what happened to him on August 29, 2025. He also intends to pursue criminal charges against those responsible. His successful completion of diversion in 2019 DVM 89 demonstrates to the Court that he will appear as required. In the one instance where he was under the supervision of a court and pretrial services, he complied with all conditions, and the matter was dismissed. The Court can impose home incarceration and order that he not drive, which will address any concerns about risk of flight that may exist.

**Conclusion**

    Mr. Rosser understands and appreciates the seriousness of the charges in this Court. The proposed conditions of release are sufficient to ensure his appearance at future court appearances and trial. To the extent the Court believes he poses a threat to any person or the community, it can be mitigated by home incarceration with GPS monitoring and supervision by Pretrial Services and Ms. Bell. The Court will hear from Ms. Bell. She is a positive influence on Mr. Rosser and will hold him accountable. We respectfully submit that pretrial detention is not necessary in this matter, and we ask the Court to grant Mr. Rosser release pending sentencing.

Dated: October 6, 2025                         Respectfully submitted,

                                                      /s/ *Marc Eisenstein*
                                          Marc Eisenstein (DC Bar No. 1007208)
                                          Coburn Greenbaum & Eisenstein, PLLC
                                          1710 Rhode Island Avenue, N.W.
                                          Second Floor
                                          Washington, DC 20036
                                          Phone: (703) 963-7164
                                          Fax: (866) 561-9712
                                          marc@coburngreenbaum.com

                                          *Counsel to Defendant*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on October 6, 2025 a copy of the foregoing was filed with the Clerk of the Court and served on all counsel of record via e-mail.

/s/
Marc Eisenstein
